### Emil Erlinger, Appellee, v. St. Louis & O'Fallon Railway Company, Appellant.

1. SAFETY APPLIANCES ACT—*requirement in regard to automatic couplers construed.* The installation of automatic couplers is not a complete performance of the obligations imposed by this act; after automatic couplers have been installed the duty is implied from the statute, although penal in character, that such automatic couplers shall be kept in good condition and repair.

2. MASTER AND SERVANT—*when vice-principal fellow-servant.* A foreman in charge of a crew of workmen is a vice-principal so long as he acts as the representative of the master; when, however, he performs duties of a mere servant, he ceases to be a vice-principal and becomes a fellow-servant.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 11, 1910.

WISE & KEEFE, for appellant; M. U. HAYDEN, of counsel.

WEBB & WEBB, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This cause was tried on an amended declaration containing two counts, in which it was alleged in the first count that appellee was employed by appellant, a railroad company, as a switchman while it was operating a train of cars over its tracks; that in violation of the statute appellant had in its train, cars equipped with couplers which could not be uncoupled without the necessity of going between the ends of cars, by means whereof and while appellee was beteen the ends of said cars for the purpose of making an uncoupling, he fell and was dragged and thereby injured.

The second count after stating the employment and his duty to switch cars, averred he was subject to the orders of a foreman of appellant and while a train being operated by appellant was being switched, he was ordered by the foreman to go between two cars while the train was in motion to uncouple the cars by lifting the coupling pin with his hand, and that while on the end beam of one of said cars in the exercise of due care, and while stooping to lift the coupling pin, the foreman knowing he was between the cars, without warning to him, signalled the engineer to stop the train which the engineer, not knowing appellee was between the cars, did at once, whereby appellee was thrown from his position and dragged and permanently injured.

There was a judgment from which appellant appealed.

The alleged errors urged as grounds for reversing the judgment are, first, the refusal of the trial court on motion of appellant to direct a verdict at the close of the evidence, and second, the giving of improper

instructions on behalf of appellee and refusing to give proper instructions asked by appellant.

It appears from the evidence submitted, in which there was little conflict, that appellee was employed by appellant as a switchman in the operation of a train operated between East St. Louis over appellant's road, a distance of seven or eight miles, and the "Nigger Hollow Mines."

On December 24, 1907, the day of the accident, the train, composed of an engine and fifty-one cars, was being pushed by the engine which was attached to its west end and running backwards eastwardly from East St. Louis to the mines. The crew of the train besides the engineer and fireman was composed of a foreman named Ferguson, one Haney called a fieldman, and appellee who had been engaged in the work some four years, and was generally familiar with it. At about three o'clock in the afternoon, the train reached O'Fallon switch when it became necessary to switch some cars of the train into the suburban yards. The cars to be switched composed a section of the train beginning after the seventeenth car from the engine. This car was a box car which was made to haul miners back and forth from the mines. Appellee was standing on this car and in order to switch the section of cars into the yards, it was necessary to uncouple them or cut them out from this box car, by a running switch. The foreman who had alighted from the train and was standing south of the track near the box car upon which appellee was, gave the signal to uncouple or cut off. To do this, appellee climbed down the side of the car by the lateral irons, placed his foot in an iron stirrup extending below the sill of the car and attempted to uncouple the section from the car by means of a pin lifter with which the car was equipped so that the car might be uncoupled without the necessity of going between the cars to lift the pin. The train was then in motion and appellee, while hanging to the side of the box car

by his left hand, made an effort by trying three or four times to uncouple the train by the pin lifter. The lifter would not lift the pin and appellee called to the foreman, "I can't get her," and the foreman answered, "Get in and get her." Appellee got between the cars and held to a rod of the box car with one foot resting on a rod and the other on the sill of the car and reaching over, uncoupled the cars; just as he did this, the box car he was holding to, stopped so suddenly as to cause the hold of appellee to break and he was thrown from the car and in front of it onto a trestle when the portion of the train in front rebounded and as one of the trucks ran over him, he caught hold of the trucks and wrapped himself around them and was carried some distance before the cars were stopped and he was taken out. At the time appellee made the uncoupling, the train was moving at about five miles an hour and from his position between the cars he could not be seen by the engineer. The signal to stop the train was given by the foreman while appellee was between the cars, and who knew of his situation.

The box car was equipped with an automatic coupler for the purpose that the car might be coupled by impact and for the purpose of uncoupling there was attached to it and connected with it a pin lifter which was a rod fastened along the end of the car and extending out to the side. Connected with the rod was a chain which also connected with the coupling pin by means of which the pin could be lifted and the cars uncoupled from the side of the car. Appellant's inspector testified he inspected the car prior to December 24, 1907, but does not say just when and does not know where the car was on the 23rd and 24th of December. There was no evidence of any notice to appellant that the coupler would not do the work intended, that is, that the pin lifter operated from the side of the car would not lift the pin and uncouple the coupler as it failed to do.

644    APPELLATE COURTS OF ILLINOIS.

Erlinger v. St. Louis & O'Fallon Ry. Co., 152 Ill. App. 640.

The breach of duty alleged in the first count of the declaration arises if at all, upon a failure by appellant to observe a statutory duty whereby appellee was injured. Section 224 of chapter 114, provides:

"That from and after the passage of this act, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line, any locomotive, tender, car or similar vehicle used in moving State traffic not equipped with couplers, coupling automatically by impact and which can be uncoupled without the necessity of a man going between the ends of cars.

"Sec. 231. That any employe of any such common carrier who shall be injured by any train, locomotive, tender, car or similar vehicle in use, contrary to the provisions of this act, shall not be deemed to have assumed the risks thereby occasioned, nor to have been guilty of contributory negligence, because of continuing in the employment of such common carrier or in the performance of his duties as such employe after the unlawful use of such train, locomotive, tender, car or similar vehicle had been brought to his knowledge.

"Sec. 228. That any such common carrier using any locomotive or tender running any train, etc., in violation of the provisions of this act, shall be liable to pay a penalty of $100 for each and every such violation."

It is insisted that where the appliances so required have been placed upon the cars the railroad company has fully performed the duty imposed and is not bound at its peril that the appliances are in repair and condition at all times; that the statute is penal and should not be given a construction that will place some obligation in it which is not there.

The general rule is that statutes imposing a penalty should have a strict construction but the rule is not to be carried to the extent that it defeats the obvious intention of the act.

"The rule of strict construction whenever invoked

comes attended with other rules and qualifications no less important and it is by the light which each contributes that the meaning must be determined. Among them is the rule that the sense of the words is to be adopted which best harmonizes with the context and promotes in the fullest the policy and object of the Legislature.'' Endlich Interpretation of Statutes, sec. 337.

''The paramount object in construing penal as well as other statutes is to ascertain the legislative intent.'' *Ibid.*

It is obvious that the mischief intended to be remedied here was the dangers incurred in going between the ends of cars to couple and uncouple them, and the policy and object of the legislature was to put an end to that necessity by requiring the kind of equipment therein provided.

We think that simply to furnish the equipment is not such full performance of the duty imposed as the law requires. To so hold would be judicially to nullify the very purpose and object of the act. The cars are not only to be so equipped, but they must be so equipped as they may couple automatically by impact and so they may be uncoupled without the necessity of a man going between the ends of cars. The law not only requires the equipment but it requires such equipment as at all times when in use avoids the necessity of going between the ends of cars.

By section 231 of the statute, the employe is relieved of all assumption of risk or of contributory negligence in continuing in the performance of his duties after a failure to comply with the provisions of the act by the railroad company has been brought to his knowledge. From what we have said respecting the duty of the railroad company and from the provisions of section 231 above quoted, we are of opinion that the common law rule insisted upon, that the company after it furnishes the equipment has fully performed its duty and must have actual or constructive knowl-

646    APPELLATE COURTS OF ILLINOIS.

Erlinger v. St. Louis & O'Fallon Ry. Co., 152 Ill. App. 640.

edge of the defect before it can be held liable, has no application.

We have carefully examined the testimony respecting the condition of the pin lifter at the time of the injury and we conclude it was sufficient to show it was so out of repair the cars could not be uncoupled without the necessity of going between the ends.

It is insisted there was no evidence tending to prove a liability under the second count. This count is based upon the alleged negligence of the foreman Ferguson in negligently signalling a sudden stop of the train while appellee was in the position described between the ends of the cars and which resulted in his being thrown from his position. The theory of appellant is that there can be no recovery under this count because Ferguson was a fellow servant.

The evidence shows that while Ferguson gave orders to appellee and others of the crew in the operation of the train, he worked with the others in its operation. The giving of signals was part of the operation of the train in which the crew including Ferguson worked together. We are of opinion that in this part of the work Ferguson and appellee were fellow-servants. While the foreman may as to some things be a vice principal such as in giving orders concerning the work, in others he may be only a fellow-servant. Ferguson as foreman had the authority to give orders to appellee which it was his duty to obey and in this relation Ferguson was a vice principal and if the injury had resulted from obeying a negligent order of the foreman, the defense that they were fellow-servants could not be invoked. Under the averments of the count and the evidence, the injury did not result from a negligent order to appellee, but resulted from a negligent signal to the engineer and in this work and in the manner in which it was performed, the members of the crew including the foreman, came within the rule constituting them fellow-servants.

The objections urged to the instructions need not

be considered as such instructions were upon questions raised by and involved in the second count of the declaration.

One good count in a declaration, if proved, is sufficient to sustain a verdict and we are of opinion the first count of the declaration is supported by the evidence and there was no error in the refusal of the court at the close of the evidence to direct a verdict for appellant. The judgment is affirmed.

*Affirmed.*