DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1912.

George H. Lucas, Administrator, Appellee, v. Peoria & Eastern Railway Company, Appellant.

1. MASTER AND SERVANT—*safety appliance acts construed.* A railway company in possession of and operating a railway and engaged in interstate and intra-state traffic is liable for injuries caused by defects in a car in violation of either the Federal or State Safety Appliance Acts whether such car was at the time being used in interstate or intra-state traffic.

2. LANDLORD AND TENANT—*when lessor railroad liable for negligence of lessee.* If a railroad is operated by a lessee, the lessor is liable for the lessee's actionable negligence.

3. LANDLORD AND TENANT—*when employes of lessee railroad company in employ of lessor.* Where a railroad is operated by a lessee its employes are to be regarded as in the employ of the lessor company.

4. FEDERAL SAFETY APPLIANCE ACT—*what defenses not available thereunder.* Neither the defense of contributory negligence nor of assumed risk is available in actions based on violations of the Federal Safety Appliance Act, since section 3 provides that no employe shall be held to have been guilty of contributory negligence where the violation by the carrier of any statute for the safety of employes contributed to the injury or death.

5. FEDERAL SAFETY APPLIANCE ACT—*what averment and proof unnecessary thereunder.* In actions based on violations of the Federal Safety Appliance Act it is unnecessary to aver or prove that one injured or killed was exercising due care at the time, and such an averment may be treated as surplusage.

(1)

6. FEDERAL SAFETY APPLIANCE ACT—*when violation established.* A violation of the Federal Safety Appliance Act is established where a finding by the jury that a car was equipped with defective automatic couplers was warranted.

7. EVIDENCE—*when admission proper.* In an action for violation of the Federal Safety Appliance Act, evidence is properly admitted which tends to show that an examination of the alleged defective coupler two days after the accident disclosed defects.

8. EVIDENCE—*when exclusion immaterial.* Whether the exclusion of testimony is proper is immaterial after dismissal of counts to which it solely pertains.

9. FEDERAL SAFETY APPLIANCE ACT—*when exclusion of evidence thereunder proper.* In an action under the Federal Safety Appliance Act for injuries caused by an alleged defective coupling, evidence of the method of uncoupling cars without going between them was not improperly excluded since the duty of the company to maintain its safety appliances in good repair is absolute.

10. ARGUMENT—*when improper and unprofessional.* It is improper and unprofessional for counsel in argument to state that while the evidence did not show exactly how deceased was killed that he knew what deceased told his wife as to the accident, and such statement will work reversal if the verdict was affected thereby.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Vermilion county; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 15, 1912. Rehearing denied April 18, 1912. *Certiorari* denied by Supreme Court (making opinion final).

REARICK & MEEKS and GEO. B. GILLESPIE, for appellant.

THOMAS A. GRAHAM and C. W. FLEMING, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case for the recovery of damages resulting from the death of James F. Lucas, which it is alleged was caused by the negligence of the defendant. A trial resulted in a verdict and judgment for the plaintiff for $5,000.

The first and second counts of the declaration charge

that the deceased was injured as the result of a failure on the part of the lessee of the defendant to have certain cars equipped with automatic couplers so they would couple and uncouple automatically without the necessity of men going between the ends of the cars, in violation of the Safety Appliance act of Illinois. The first and second additional counts charge that the deceased was injured as a result of the failure of the lessee of the defendant to have said cars so equipped, in violation of the Federal Safety Appliance act. Each count, with the exception of the second additional, charges that the deceased was in the exercise of due care for his own safety, and each charges that the injury to the deceased was due to the fact that certain cars were not so equipped that they could be uncoupled without the necessity of men going between the ends of the cars.

The evidence discloses that the railway upon which the deceased was injured, ran from Springfield, Ohio, to Peoria, Illinois, and was in the possession of and being operated by the C. C. C. & St. L. Railway Co., under a lease from the defendant company, and that the former company was engaged in moving traffic by railroad, between points in this state, and was also a common carrier engaged in interstate commerce by railroad. It is well settled that if the defective car in question was being used by such lessee company in violation of the provisions of either the Federal or the State statute, such statute would have been applicable without regard to whether the car in question was being used at the time in intra-state or interstate traffic, Southern Railway Co. v. United States (U. S. Supreme Court, opinion filed October 30, 1911) and the railway company so in possession of and operating such railway would have been liable for damages resulting from such violation. It is contended, however, that inasmuch as the defendant company was not in possession of or operating the railway, and not engaged in either intra-state or interstate traffic, it cannot be held liable

for violation of the statute by its lessee merely because of its ownership of the railway. This court is committed to the doctrine that where a railroad is operated by a lessee, the employes of the lessee are to be regarded as in the employ of the lessor company; that the lessor is liable for the actionable negligence of the lessee company to the same extent. (Wabash R. R. Co. v. Keeler, 127 Ill. App. 265.) We believe such view to be fully sustained by the reasons given and the conclusions reached by the court in Railway Co. v. Hart, 209 Ill. 414, and R. R. Co. v. Weber, 219 Ill. 372

It is further urged that the plaintiff has failed to prove by the greater weight of the evidence, that the deceased was at the time he was injured, in the exercise of due care and caution for his own safety. They insist that neither the State nor Federal act relieves the plaintiff of alleging and proving due care on the part of the deceased. We think such contention is fully and decisively answered by the amendments to section 3 of the Federal statute which provides that "no employe of a common carrier by railroad, who may be injured or killed, shall be held to have been guilty of contributory negligence, in any case where the violation by such common carrier of any statute enacted for the safety of employes, contributed to the injury or death of such employe." We think it is equally clear that under the express provisions of the Federal act, neither the defense of contributory negligence nor assumed risk is available in actions based upon violations of the act, and to recover under the counts of the declaration predicated upon the Federal act, it was unnecessary for the plaintiff to either aver or prove that the deceased was in the exercise of due care and caution at the time he was injured. Such averments in the first additional count may therefore properly be treated as surplusage.

At the time Lucas received the injuries which caused his death he was in the employ of the lessee railroad

company and was acting as foreman of a switching crew in its yards at Danville, Illinois. One of the spur tracks in said yard ran east and west, and from the west end sloped downward toward the east. Just prior to the accident, the crew, of which Lucas was foreman, had started to take several cars off the spur track in question, leaving thereon the furthest car from the switch, referred to as the New York Central car, and which had arrived from Grand Rapids, Michigan, on that day. Next to the New York Central car and coupled thereto, was one referred to as the Pennsylvania car. Both cars were equipped with automatic couplers operated by means of levers which lifted the couplings connecting the cars and extended from the coupler to a few inches beyond the sides of the cars. The evidence introduced by the plaintiff tended to show that after the switch engine had been backed upon the spur track at the east end thereof, the deceased, who was on the south side of the cut of cars, took hold of the lever on the south side of the New York Central car, and after signalling to one of the brakemen to go ahead, made several unsuccessful attempts to lift the lever; that he then stepped between the two cars and endeavored to raise the pin from the coupler on the west end of the Pennsylvania car, and that while there between the cars, they became uncoupled, causing the New York Central car to run down the grade, and over Lucas, so injuring him that he died.

There was evidence tending to prove that the lever upon the latter car was not in good working order, in that it was bearing upon the brake-staff, so as not to work freely, and also that the chain attached to the knuckle-lock was too short to permit the knuckle-lock to drop into its proper place. While there is some conflict in the evidence upon that issue, the jury were warranted in finding that the New York Central car was not equipped with couplers which should couple automatically by impact, and that the same could not

be uncoupled without the necessity of men going between it and the connecting car. A violation of the Federal statute was thus established. The jury was also warranted in finding that such violation was the proximate cause of the death of Lucas.

The defenses of assumed risk and contributory negligence being unavailing, the verdict of guilty was justified. It is urged however that error intervened upon the trial which was prejudicial to the defendant; that the trial court erred in its rulings upon the evidence and instructions, and that counsel for the plaintiff made improper statements to the jury in the closing argument. We have examined the instructions offered and find that those given are in accord with the law as herein expressed, and that those not given were properly refused. The court properly admitted evidence tending to show that an examination of the coupler in question two days after the accident, disclosed that the inner parts were in a battered condition and that the chain attached to the knuckle-lock was defective. (Ry. Co. v. Dorsey, 89 Ill. App. 555; S. C. 189 Ill. 251.)

The testimony of the witness Marvel, excluded by the court, pertained solely to the common law counts of the declaration, which were dismissed by the plaintiff at the close of all the evidence, and whether or not it was properly excluded became thereafter immaterial. The contention that evidence as to the method of uncoupling cars without going between them was improperly excluded, and that plaintiff's tenth instruction should not have been given, is answered by the cases of U. S. v. D. & R. G. R. Co., 163 Fed. Rep. 519 and N. & W. R. Co. v. U. S., 177 Fed. Rep. 623, which hold that the duty of a railroad company to maintain its safety appliances in good repair is absolute.

During his closing argument counsel for the plaintiff stated to the jury that while the evidence did not show exactly the manner in which the deceased was killed, yet that he (counsel) knew what the deceased

had told his wife as to how the accident happened. Upon objection being made, the trial judge directed counsel to confine himself to the evidence. The statement in question was manifestly improper and unprofessional, and if we thought that by reason thereof the jury returned a different verdict than they would have otherwise, we should not hesitate to reverse the judgment rendered upon the same. We are of opinion, however, that the verdict was not affected.

The judgment of the Circuit Court is affirmed.

*Affirmed.*