## Henry Steckstor, Appellee, v. Cleveland, Cincinnati, Chi= cago and St. Louis Railway Company, Appellant.

1. SAFETY APPLIANCE ACTS—*when declaration sufficient. Held,* that where the declaration alleged that ''such cars were not then and there equipped with couplers that would then and there couple automatically by impact, without a man going between the ends of the cars, contrary to the statute in such case made and provided,'' that evidence of defective couplers which would not work automatically was competent and that such evidence was sufficient to authorize a recovery.

2. SAFETY APPLIANCE ACTS—*what defense not available under Federal and State Acts.* The defense of contributory negligence cannot be interposed to bar a recovery.

Action in case for personal injuries. Appeal from the City Court of Harrisburg; the HON. A. E. SOMERS, Judge, presiding. Heard in

this court at the October term, 1911.   Affirmed.   Opinion filed March 21, 1912.   *Certiorari* denied by Supreme Court (making opinion final).

P. J. KOLB and W. F. SCOTT, for appellant; GLENNON, CARY, WALKER & HOWE, of counsel.

CHOISSER, CHOISSER & KANE and CLARK & HUTTON, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee, while a brakeman, in the employ of appellant, was seriously injured and brought suit against appellant for damages, charging that his injuries were occasioned by reason of the failure of the railway company to equip certain of its cars with automatic couplers in compliance with the state and federal safety appliance acts.

There were two counts in the declaration, the first based on the state statute and the second on the federal statute, but at the close of plaintiff's evidence, the court, on motion of appellant, instructed the jury to find defendant not guilty as to the second count and the case thereafter proceeded under the first count based on the state law alone.

A verdict for $1950 was returned by the jury in favor of appellee and for that amount the court gave judgment.

The facts in the case as shown by the proofs, are as follows: On September 28, 1909, appellee was head brakeman of a yard switching crew consisting of an engineer, fireman, conductor, and two brakemen. On that date the crew were directed to proceed from the yards of appellant at Harrisburg, Illinois, with a cut of empty coal cars, to the mine of the Saline Collieries Company at Carrier Mills, situated on appellant's road a few miles south of Harrisburg, and to bring

42      Appellate Courts of Illinois.

Steckstor v. C., O., C. and St. L. R'y Co., 169 Ill. App. 40.

back some loaded coal cars which were standing on the sidetrack at said mine. The crew was accompanied on the trip by the yard foreman, W. O. Horn. On arriving at the mine and placing the empty cars in proper position for loading, the engine backed in on to the track where the loaded cars, about ten in number, were standing. Three cars next to the engine were coupled together but the third and fourth cars were not coupled, and between them is where appellee's injury was received. One of these two cars was equipped with an R. E. Janney coupler and the other with a Climax coupler, both of which, when in proper condition, are operated by a lever at the side of the car by means of which a pin is pulled up, releasing the coupling whereupon the knuckles open automatically. When cars equipped with such couplers in proper working condition, are pushed together, they couple automatically without the necessity of a brakeman going between them. The rear brakeman, Butler, who was looking after this coupling, signalled to the engineer to back up which he did, but the cars failed to couple. He again gave the signal and the second time there was a failure to couple. At this time appellee arrived at the place where Butler was engaged and directed him to go back towards the rear end of the train, saying he would make the coupling. The cars were standing north and south with the engine at the south end of the line.

Appellee testified, and his testimony is to some extent corroborated by Horn, the yard foreman, a witness for appellant, who stood within a few feet of him at the time in question, that the drawbar on one car was pushed to the east and that on the other to the west; that he gave the engineer a signal to go ahead and pulled the lever at the side of the car, but this did not open the knuckles; that he then reached in with his hand and opened the knuckles and again

signalled the engineer to back up; that the cars again failed to couple and that this operation was repeated several times; that he went in between the cars and attempted to push the drawbars together with his shoulders but they were rusty and would not move; that as he gave the signal to the engineer to back up for the sixth time he stood with his right foot on the east rail and his hand holding the grab iron on the stationary car, and as the cars came together he gave one of the drawbars a quick kick with his left foot which broke it loose so that it made the coupling. At the same time his right foot slipped off the rail and his left foot was caught between the couplers and so crushed that it had to be amputated; that he had been ordered by Horn to hurry up in order that they might get away to meet a passenger train at Bedford.

Appellant introduced evidence to show that the couplers were, after being brought to Harrisburg the same evening, tested by coupling and uncoupling them and were found to be in good working order, no repairs having been made upon them in the meantime; also that on the following morning the couplers were taken apart and examined and that no defect of any kind was found. Appellant also claimed, and introduced evidence tending to prove, that there was no rust upon the couplers except a small amount that ordinarily accumulates on couplers while in service and that the cars in question had been in service.

Appellant insists that there was a variance between the allegations of the first count of the declaration, under which recovery was had, and the proofs offered, in that the declaration charged appellant with having failed to equip the cars in question with couplers that would couple automatically by impact, while the proof only tended to show that the couplers were defective; that no proof was offered by appellee that the cars

were not equipped with automatic couplers, and it is undisputed that they were so equipped.

The charge in the declaration was that "said cars were not then and there equipped with couplers that would then and there couple automatically by impact, without a man going between the ends of the cars, contrary to the statute in such case made and provided." While, under this charge, proof would have been proper to show that the cars were not equipped with automatic couplers, yet it was sufficiently broad to include the charge that though equipped with couplers, which if in good order would act automatically, yet their condition was such that they would not then and there couple automatically by impact. In the same connection appellant contends that in construing this law the fact should be taken into consideration that any piece of machinery will not always work perfectly under any and all conditions, and that so long as a coupler is of the kind required by law and is shown to be in good working order, a railroad company should not be held liable merely from the fact that such coupler may fail to act. Substantially the same contention was made before this court in the case of Erlinger v. St. L. & O'Fallon Ry. Co., 152 Ill. App. 640, and we there said: "We think that simply to furnish the equipment is not such full performance of the duty imposed as the law requires. To so hold would be judicially to nullify the very purpose and object of the act. The cars are not only to be so equipped but they must be so equipped as they may couple automatically by impact and so they may be uncoupled, without the necessity of a man going between the ends of the cars. The law not only requires the equipment but it requires such equipment as at all times when in use avoids the necessity of going between the ends of the cars."

The evidence in this case showed that while the cars

in question were equipped with automatic couplers of approved design, yet as a matter of fact they were in some way defective or had become out of order so that after repeated attempts they could not be made to couple automatically and thus answer the purpose for which they were originally intended. So far as appellee was concerned in the performance of his duty, the cars might as well have been devoid of all safety coupling devices whatever. While there was some controversy as to the exact condition of the couplers, yet it was for the jury to say, under proper instructions as to the law, whether as a matter of fact, said cars were equipped with the couplers provided for by the statute.

The Illinois statute in reference to safety appliances provides, "That any employee of any such common carrier who may be injured by any train, locomotive, tender, car or similar vehicle in use contrary to the provisions of this act, shall not be deemed to have assumed the risks thereby occasioned, nor to have been guilty of contributory negligence, because of continuing in the employment of such common carrier or in the performance of his duties as such employee after the unlawful use of such train, locomotive, tender, car, or similar vehicle had been brought to his knowledge." Rev. Stat. (Hurd 1908) chap. 114 sec. 231.

The main contention of appellant appears to be, that this statute does not cut off entirely the defense of contributory negligence, nor relieve the appellee of the burden of alleging in his declaration and proving, that appellee at and immediately prior to the time of his injury was in the exercise of due care and caution for his own safety; that the only advantage accruing to the employee therefrom is that he shall not be deemed guilty of contributory negligence, because of continuing in his employment or in the per-

formance of his duties, after the unlawful use has been brought to his knowledge.

In Luken v. L. S. & M. S. Ry. Co., 248 Ill. 377, under a somewhat similar case where a switchman assisting in making up a train, went between cars equipped with automatic couplers, one of which was not in working order, for the purpose of effecting the coupling and was injured while endeavoring to put the coupler in such condition that it would work, it was said: "Under the Illinois statute, plaintiff cannot be held to have assumed the risk of injury by going between the cars in the performance of his duties, and it does not appear that he was negligent in any other respect;" and a judgment in favor of the switchman was affirmed.

What is above said would appear to apply with equal force to appellee in this case. It is true that the doctrine of assumed risk and contributory negligence, while frequently considered together, are separate and distinct defenses, but we deem it a proper inference from the doctrine above laid down that appellant cannot, under the statute, avail itself of the defense of contributory negligence as against appellee, based on the fact that he went between the cars in making the coupling.

Appellant complains that four instructions offered by it, were refused by the court. We think the action of the court in this regard was proper, as they were at variance with the views above expressed in regard to the doctrine of contributory negligence. We have considered other criticisms of the rulings of the court in regard to the instructions, but they do not seem to us to have involved any error. The judgment of the court below will be affirmed.

*Affirmed.*