498    APPELLATE COURTS OF ILLINOIS.

Davidson v. Peoria & Pekin Union Ry. Co., 203 Ill. App. 498.

## George J. Davidson, Appellee, v. Peoria & Pekin Union Railway Company, Appellant.

### Gen. No. 6,299.

1. MASTER AND SERVANT, § 147*—*what is duty of employer to keep cars equipped with safety appliances.* An employer's duty under the Federal Safety Appliance Act to use even great diligence in keeping cars equipped as therein required and his liability for defects in required appliances of which he has no notice and in the exercise of reasonable care could not have notice is absolute and imperative.

2. MASTER AND SERVANT, § 98*—*what law governs as to employer's duty and liability under Federal Safety Appliance Act.* The question of an employer's duty and liability under the Federal Safety Appliance Act is a federal question in which the decisions of the federal courts govern.

3. MASTER AND SERVANT, § 147*—*what is liability of employer for injuries to servant resulting from unknown defects in appliances.* A temporary defect and failure to work of an equipment required by the Federal Safety Appliance Act creates a liability in the employer for injuries to the servant and subjects him to the penalties and burdens of the act, even though it arises from some unknown defect which he could not, in the exercise of reasonable care, have ascertained and remedied.

4. MASTER AND SERVANT, § 98*—*when defenses of contributory negligence and assumed risk are unavailable.* Under sections 3 and 4 of the Federal Employers' Liability Act, the defenses of contributory negligence and assumed risk are not available to an employer against whom an action is brought to recover damages because of injuries sustained from defective appliances required by the Federal Safety Appliance Act, and an averment in the declaration of due care of plaintiff is surplusage.

5. MASTER AND SERVANT, § 147*—*when evidence is sufficient to show that coupling appliance does not comply with Federal Safety Appliance Act.* Evidence *held* sufficient to show that the coupling appliance causing plaintiff's injury was, at the time and place of the injury, defective and not in compliance with the Federal Safety Appliance Act, and the verdict of the jury so finding was not against the manifest weight of the evidence, in an action by a railroad switchman to recover damages for such injury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. MASTER AND SERVANT, § 147*—*what is extent of liability of employer for use of defective coupling appliance.* Where a coupling appliance, required by the Federal Safety Appliance Act, was defective at the time and place of an injury to a switchman caused thereby, *held* that it would be immaterial how long before that it had been defective, or how soon after that the defect was removed, or that no want of care or intent to evade the law could be imputed to the employer, in an action to recover damages for such injury.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed August 10, 1916. Rehearing denied October 5, 1916.

STEVENS, MILLER & ELLIOTT, for appellant.

WEIL & BARTLEY, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

George J. Davidson, the appellee, forty-six years old, between three and four o'clock in the morning of March 11, 1915, was in the employ of the appellant railway company as switchman in its yards near East Peoria, and while assisting the crew with whom he was working in making up a freight train for the Vandalia Railroad Company an automatic coupler failed to work by impact. He went between the cars attempting to fix it. His right wrist was caught and injured, resulting in a necessary amputation about five inches below the elbow. Appellant was engaged and appellee was then employed by it in interstate commerce. He brought this action to recover for that injury and it was tried on two counts of his declaration alleging that the automatic coupler was in a defective condition, and could not be coupled automatically by impact, and that he was then and there employed in inter-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

state commerce, with other appropriate allegations to permit a recovery under the Federal Employers' Liability Act for an injury resulting from the violation of the federal act requiring cars to be equipped with couplers coupling automatically by impact without the necessity of employees going between the ends of said cars. He had judgment on a verdict of $6,525, from which this appeal is prosecuted and a reversal asked on the grounds that no negligence of the defendant is shown; that the coupler in question was in perfect order and that the court erred in refusing certain instructions offered by the defendant.

Appellee testified that two sections of the train were about to come together; that he was in position to see that a proper coupling was made; that the foreman of the crew, Hurley, was stationed some distance away and another switchman, Saunders, some distance beyond Hurley so that signals from appellee could be communicated through those two men to the engineer; that signals were given by lantern and that the engineer was entirely governed thereby; that, as the cars approached and were about to come together, appellee gave a signal to slow down, or ease up, and the cars came together properly without too much violence but did not couple automatically as they should have done; the pin that held the coupling in place did not drop. Discovering this, he gave a stop signal, which was obeyed. He then gave a go ahead signal and the cars to which the engine was attached pulled away about a car length and stopped on appellee's signal. He then endeavored by shaking the lever to the coupler to cause the pin or lock to go down. This pin is so arranged on the coupler that when a coupling is about to be made the knuckle is opened and the pin, which works in a hole, or slot, is held up. If working properly, the pin is jarred by the impact and falls down into the slot, locking the knuckle. It can be pulled up and the knuckle released by means of a lever on the

end of the car so that it is not necessary for men to go between the ends in working it. He could not make the pin go down where it belonged by shaking the lever. He then went between the ends of the cars and tried to adjust it—tried to hammer it down with his brake club without success. Then using his right hand he put his fingers up underneath the coupler into the hole into which this pin is supposed to drop, endeavoring in that way to loosen the pin. This placed his hand under the coupler and left his wrist and forearm alone exposed. He says while in this position, without any warning or signal, the cars came back and came together, crushing his wrist and forearm.

That the injury to the wrist and arm was inflicted because of appellee's going between the cars to do something to the coupler is beyond controversy. But the two men before mentioned stationed to communicate the signals from appellee to the engineer, and the engineer and his fireman all testify that the cars were not moved forwards after the first impact; that the engineer got and obeyed the signal to back his section of cars down to the point of coupling, and that the next thing that came to their knowledge was the injury to appellee. Appellant's theory of the accident, based on its testimony, is that when the cars came in contact the knuckles of the receiving coupler were not completely opened and that they were entirely closed by the impact without making connection, and that appellee, seeing that the knuckles did not interlock, used the cut lever to try to open or pull up the lock pin again and put his hand in there to open the knuckles supposing he could do it on the separation and rebound that follows in coupling a long train, but that he was not quick enough and was caught in this effort; that couplers do not always work in the first impact, sometimes two or three efforts are necessary. The pin may not drop perhaps because the knuckles are not entirely

502    Appellate Courts of Illinois.

Davidson v. Peoria & Pekin Union Ry. Co., 203 Ill. App. 498.

open or there may be some rust or temporary defect that prevents the free passage of the opposing knuckles. This theory of appellant as to how the accident actually happened is plausible except for one thing. There is no question that appellee's wrist and arm were injured and that his hand was not crushed, as it likely would have been if it had happened that way. This mute testimony strongly corroborates appellee's statement of what he was doing and how he was doing it at the time of the injury. The wound was what would happen in an accident occurring as he says it did. It was a fair question for the jury. It appears that the coupler was in working condition shortly before and shortly after the accident. Appellant says it is therefore unreasonable to suppose that it was out of order just at the time of the accident. But it cannot be denied in any view of the testimony that there was an apparent failure of the coupler to work at just that time, and that appellee, who was an experienced switchman and entirely familiar with such matters, thought it was necessary to go between the cars to remedy the difficulty. If there was a temporary defect which caused a failure to work just then and there it was sufficient ground for this action and judgment.

Whether the Federal Safety Appliance Act is complied with on the part of employers by using ordinary diligence or even great diligence in keeping their cars equipped, as therein provided, and whether employers should be held liable for defects in required appliances of which they have no notice, and in the exercise of reasonable care could not have notice, is no longer an open question. It is a federal question in which the decisions of the federal courts govern. The duty was held to be absolute in *St. Louis, I. M. & S. Ry. Co. v. Taylor,* 210 U. S. 281. That position was strongly attacked by counsel but reaffirmed by the court in *Chicago, B. & Q. Ry. Co. v. United States,* 220 U. S. 559,

in which case the authorities are so thoroughly discussed and reviewed that we do not cite or refer to cases there discussed. In *Chicago, R. I. & P. Ry. Co. v. Brown*, 229 U. S. 317, 320 [3 N. C. C. A. 826], the two last mentioned cases are treated as settling the law, "That the failure of a coupler to work at any time sustains the charge of negligence in this respect, no matter how slight the pull on the coupling lever." That the duty is imperative is recognized as the law in *Luken v. Lake Shore & M. S. Ry. Co.*, 248 Ill. 377. In *Erlinger v. St. Louis & O'Fallon Ry. Co.*, 152 Ill. App. 640, the court said that the law requires the equipment at all times so that when in use the necessity for going between the ends of the cars is avoided. The same court repeated and reaffirmed that statement in *Steckstor v. Cleveland, C., C. & St. L. Ry. Co.*, 169 Ill. App. 40, 44. It seems to follow from the federal cases that a temporary defect and failure to work of an equipment required by the Safety Appliance Act creates a liability and subjects the defendant to the penalties and burdens imposed by that act, even though such failure arose from some defect unknown to the employer, which in the exercise of reasonable care he could not have ascertained and remedied. Under sections 3 and 4 of the Employers' Liability Act neither the defense of contributory negligence nor of assumed risk is available to appellant. An averment in the declaration of due care of the plaintiff is surplusage. *Lucas v. Peoria & Eastern Ry. Co.*, 171 Ill. App. 1.

The instructions to the jury were much more favorable for appellant than the law heretofore stated warranted. We conclude that there is sufficient evidence showing and tending to show that the coupling was at the time and place in question defective and not in compliance with the federal statute to forbid our disturbing the verdict on the ground that it is manifestly against the weight of the evidence; that if the coupling

was then and there so defective it is not material how long before that time it had been defective, or how soon after that time the defect was removed, and not material that no want of care or intent to evade the law can be imputed to appellant; that the instructions, as a series, were much more favorable to appellant than it had a right to ask, and that there was no reversible error in giving or refusing instructions. No question is raised as to the action of the court in ruling on the evidence, and no error is suggested not hereinbefore mentioned. The judgment should therefore be affirmed.

*Affirmed.*