FRANK J. LUKEN, Defendant in Error, vs. THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, Plaintiff in Error.

#### Opinion filed February 25, 1911.

1. STATUTES—*State court is bound by construction of Federal statute by the Federal courts—effect where State statute is similar.* In construing a Federal statute a State court is bound by the construction thereof by the Federal courts, and while a State court, in construing a State statute, is not bound to follow the Federal court's construction of a like Federal statute, construed before the State statute was passed, yet it is inclined to do so.

2. RAILROADS—*Illinois statute requiring automatic couplers applies both to coupling and uncoupling cars.* The Illinois statute requiring cars to be equipped with automatic couplers coupling by impact, so that employees will not be required to go between the cars to uncouple them, is like the Federal statute in that respect, and, like that law, applies both to coupling and uncoupling cars.

3. SAME—*duty of a railroad to haul only cars having automatic couplers is absolute.* The Illinois statute making it unlawful for a carrier engaged in moving traffic between points within the State to haul any car not equipped with automatic couplers which will work for the purpose intended, imposes an absolute duty upon carriers to provide such couplers and keep them in repair, and it is not sufficient that they exercise reasonable care to maintain the couplers in operative condition and do not intentionally violate the statute.

4. SAME—*an injured employee not bound to prove that carrier knew that automatic coupler would not work.* In an action by a switchman injured while attempting to open by hand an automatic coupler which would not work by impact, it is not necessary, under the Illinois statute on that subject, for the plaintiff to prove that defendant knew or by the exercise of reasonable care might have known that the coupler would not work.

5. SAME—*Illinois statute concerning automatic couplers applies to empty cars.* The Illinois statute making it unlawful for carriers engaged in hauling cars between points in Illinois to haul cars not equipped with automatic couplers applies both to loaded and empty cars being used in intra-State traffic.

6. SAME—*State has power to pass laws regulating intra-State traffic.* A State has power to pass laws regulating traffic between points within the State notwithstanding the power of Congress to control inter-State traffic, provided the regulations prescribed by

the State law are not inconsistent with legislation of Congress on the subject of inter-State traffic.

7. SAME—*when traffic is domestic and subject to State control.* If the places between which passengers or property are being transported and the railroad over which they are being transported are within the State the traffic is domestic and subject to State control, even though the railroad company may be engaged in both inter-State and intra-State commerce.

8. SAME—*fact that Congress has acted as to inter-State traffic does not preclude action by the State.* The fact that Congress has passed a law requiring railroads engaged in inter-State traffic to haul only cars equipped with automatic couplers does not preclude a State from legislating on the subject with reference to traffic within the State, if the provisions of the State law are not inconsistent with those of the act passed by Congress.

9. SAME—*Illinois statute requiring automatic couplers is not inconsistent with Federal law.* The Illinois statute making it unlawful for carriers engaged in hauling cars between points within the State to haul cars not equipped with automatic couplers is not inconsistent with or repugnant to the Federal law upon that subject, which applies to carriers engaged in inter-State commerce.

10. SAME—*character of traffic not determined by character of carrier.* If a car in the yards of a station in Illinois is to be transported from that station to another station in Illinois the traffic is intra-State, notwithstanding the carrier which attempts such transportation is an inter-State railroad, engaged in both inter-State and intra-State commerce.

11. SAME—*an employee does not assume risk in going between cars to work defective automatic coupler.* Under the Illinois statute relating to automatic couplers upon cars employed in intra-State traffic, an employee of a railroad company about to move such a car does not assume the risk of injury by going between the cars to work with his hands an automatic coupler which is out of repair and will not work by impact.

12. APPEALS AND ERRORS—*when judgment of Appellate Court is conclusive.* If the evidence for the plaintiff fairly tends to support the first count of the declaration, which is based on the Illinois statute concerning automatic couplers on cars, the court is justified in submitting the issues to the jury under that count; and an affirmance by the Appellate Court of the judgment of the trial court in favor of the plaintiff is conclusive upon the Supreme Court, even though the trial court may have erred in vacating, after verdict, an order requiring the plaintiff to elect between that count and one based upon the Federal statute of like import.

13. SAME—*constitutional question is waived by appealing to the Appellate Court.* The question whether the statute upon which a suit is based is constitutional is waived by the defendant if he prosecutes an appeal to the Appellate Court and submits the case upon assignments of error which that court has power to consider and determine.

14. SAME—*verdict will not be disturbed because contrary to instructions which are erroneous.* A verdict which is in accordance with the law and the evidence will not be disturbed by the Supreme Court because it is contrary to erroneous instructions given at the request of the party against whom the verdict was returned.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding.

GLENNON, CARY, WALKER & HOWE, for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This action was brought by defendant in error, (hereafter referred to as plaintiff,) against the plaintiff in error, (hereafter referred to as defendant,) to recover damages for personal injuries.

Defendant is operating a line of railroad running from Chicago, Illinois, to Buffalo, New York, and is a common carrier of passengers and freight. Plaintiff was at the time of his injury a switchman employed by defendant at its yards in Chicago. At about 1:30 o'clock A. M., July 15, 1905, he was assisting in making up a transfer train composed of forty-five cars located on one of the tracks of defendant in its yards. Plaintiff's duty was to couple the cars, and while thus engaged he received the injury complained of. The cars were equipped with automatic couplers, but the coupler on one car was not in working order and would not couple by impact. Plaintiff went between

the cars for the purpose of endeavoring to effect the coupling, and while endeavoring to put the coupler in such condition that it would work, the cars were moved and brought together, severely injuring him.

The declaration contains two counts. The first count is based upon the statute of this State requiring the use of safety appliances on railroads engaged in moving traffic between points in the State of Illinois. Section 2 makes it unlawful for any such common carrier to haul any car used in moving such traffic which is not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars. (Laws of 1905, p. 350.) Said first count charges the violation of this statute by defendant by hauling and using upon its line of railroad in moving traffic between points in the State of Illinois a certain car equipped with a certain automatic coupler which, by reason and in consequence of its then improper and defective condition of repair, could not be coupled automatically by impact without the necessity of switchmen going between the ends of the cars. The second count is based on the Federal statute requiring common carriers engaged in inter-State traffic to equip their cars with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars. Said second count charges the violation of this statute by defendant by hauling and moving upon its line of railroad a certain car used in moving inter-State traffic, equipped with an automatic coupler which was in such defective and improper condition that the car could not be coupled automatically by impact without the necessity of switchmen going between the ends of the cars.

Defendant pleaded the general issue and a trial was had by a jury. At the conclusion of all the evidence defendant moved the court to require plaintiff to elect under which count the case should be submitted to the jury, and, over

the objections and exceptions of plaintiff, the court required an election. Thereupon plaintiff elected to go to the jury on the first count of the declaration. The jury returned a verdict in favor of the plaintiff, assessing his damages at $10,000. After the return of the verdict, on motion of the plaintiff the court vacated the order requiring an election, and, after overruling motions for a new trial and in arrest of judgment, rendered judgment on the verdict. Defendant prosecuted an appeal to the Appellate Court for the First District, and that court affirmed the judgment of the trial court. The case is brought to this court by writ of *certiorari.*

Plaintiff testified that before the cars were brought together to couple them by impact he examined the couplers to see if they were in order and found the knuckle of the car in question would not open. He made some effort to open it and get it in condition to couple, but failing to do so went to another car north of it and examined the coupling on it. He then returned to the car in question and again endeavored to open the knuckle and get the coupler in condition, but found it would not open so the coupling could be made. In attempting to get the coupler in condition he had to go between the cars and use his hands. While thus engaged the cars were brought together and plaintiff was injured. There is no proof as to the length of time the coupler had been defective or out of order, and defendant contends that the evidence failed to show it violated any duty it owed to plaintiff. Defendant's position is, that the car having been equipped with an automatic coupler it was incumbent on plaintiff to show that its defective condition was known, or by the exercise of reasonable care might have been known, by it before the injury. In addition to the testimony of plaintiff, the conductor in charge of the train that was being made up testified that he tried to effect the coupling twice by impact,—once before plaintiff was injured and once afterwards,—and failed each time.

After the second failure the car was placed on the repair track. There was no proof of the coupler being out of order or defective previous to the time mentioned by the plaintiff and the conductor.

While both the Illinois statute and the Federal statute require cars to be equipped with couplers coupling automatically by impact, so that they can be uncoupled without requiring men to go between the ends of the cars, in considering the Federal statute the Supreme Court of the United States, in *Johnson* v. *Southern Pacific Railway Co.* 196 U. S. 1, held the statute should be so construed as to promote in the fullest manner the apparent policy and object of its adoption, and that it was intended to, and did, cover both coupling and uncoupling cars. Both the State and Federal acts were passed to protect men engaged in these duties, and it cannot be denied that it is the duty of the carrier to equip its cars with automatic couplers and maintain them in such condition that the cars can be coupled and uncoupled without employees being required to go between them in performing their duties, and the Federal courts, in cases arising under the Federal statute, have by an almost uniform line of decisions held that the duty of the carrier is not merely that of exercising reasonable care in maintaining the prescribed safety appliances in an operative condition, but is absolute. *Norfolk and Western Railroad Co.* v. *United States,* 177 Fed. Rep. 625; *St. Louis, Iron Mountain and Southern Railroad Co.* v. *Taylor,* 210 U. S. 281; *United States* v. *Atchison, Topeka and Santa Fe Railway Co.* 163 Fed. Rep. 517; 90 C. C. A. 327; *Chicago, Burlington and Quincy Railroad Co.* v. *United States,* 170 Fed. Rep. 556; 95 C. C. A. 642.

In *Norfolk and Western Railroad Co.* v. *United States, supra,* will be found a very large collection of cases decided by the Federal courts holding that it is the absolute duty of common carriers not to haul cars which are not equipped with safety appliances that will operate for the purpose for

which they are required to be provided, and relief from the liability provided for non-compliance with the act cannot be obtained by showing reasonable care and want of intentional violation of the statute.   The court refers to *St. Louis and San Francisco Railroad Co.* v. *Delk,* 158 Fed. Rep. 931, (86 C. C. A. 95,) and *United States* v. *Illinois Central Railroad Co.* 170 Fed. Rep. 542, (95 C. C. A. 628,) both decided by the Circuit Court of Appeals for the Sixth Circuit, holding a contrary rule, but says those cases are contrary to the great weight of authority.

In construing a Federal statute this court is bound by the construction placed upon the act by Federal courts.   In construing a similar State statute we are not necessarily bound to follow the construction of the Federal courts in construing a Federal statute, but where, as here, the two acts are so nearly identical and the State act was passed after the Federal statute had been construed and both acts were intended to accomplish the same object, we would naturally incline to follow the construction given the Federal statute by Federal courts.   But in our opinion the construction placed upon the Federal statute by the Federal courts is the sound and proper construction, and in the absence of Federal authority we would give the State statute the same construction that the Federal courts have given the Federal statute, by holding that the duty imposed upon the carrier to equip and maintain safety appliances in such condition and state of repair that they will operate in the manner and for the purposes intended is absolute, and the carrier can not be heard to say in defense of an action brought by one injured in consequence of its failure to perform its duty, that the plaintiff is bound to prove that the carrier did not exercise reasonable care to maintain the safety appliances in good condition and repair.   The court properly refused three instructions offered by defendant that it was incumbent upon the plaintiff to prove that the defendant knew, or

by the exercise of reasonable care might have known, of the defective condition of the coupler.

We think the trial court erred in requiring plaintiff to elect under which count the case should be submitted to the jury. Plaintiff's evidence made a case against the defendant that justified its submission to the jury and it should have been submitted under both counts. Defendant now insists that if there was any liability shown by the testimony it was under the second count, and that count having been taken from the jury by election under the ruling of the court, and by the instructions given, no recovery could be had, under the evidence, under the first count. In the view we take of the case we do not find it necessary to determine whether the action of the court in vacating the order of election after the verdict was returned was erroneous or not. If the evidence of the plaintiff fairly tended to sustain the first count of the declaration, the court was justified in submitting the issues to the jury under that count, and the affirmance of the judgment of the trial court by the Appellate Court in that event would be conclusive upon us. In our opinion the evidence of the plaintiff, which was uncontradicted, fairly tended to make a case under the first count. The proof shows the car was being moved from defendant's yards at Park Manor to the Union Stock Yards, both of said points being within the State of Illinois. While it is true defendant's railroad is an inter-State road and defendant is engaged in inter-State traffic, it is also engaged in intra-State traffic. What point the car in question came from (which was a Chicago, Milwaukee and St. Paul car) and to what point it may have been finally destined to be hauled does not appear from the proof, but at the time the injury occurred the car was being hauled from one point in Illinois to another point in the same State. It was an empty car, but the law applies as well to empty cars as to loaded cars. The character of the traffic the car was being used for at the time of the injury is to be determined from

the proof as to the points between which the car was being moved at the time, whether the road over which the car was being moved was an inter-State road and whether the car was sometimes used in inter-State traffic or not.

The defendant contends that the State has no power to regulate intra-State traffic being carried over an inter-State road, and that the statute of the State of Illinois, in so far as it attempts to do so, is invalid, because the power to regulate such traffic is conferred by the constitution of the United States upon Congress and is prohibited to the States. Under repeated decisions of this court defendant waived the right to question the validity of the statute by prosecuting its appeal to the Appellate Court. (*Case* v. *City of Sullivan*, 222 Ill. 56; *Barnes* v. *Drainage Comrs.* 221 id. 627; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *City of Chicago*, 242 id. 178.) The validity of the Illinois statute is therefore not properly before us, but we deem it not improper to say that if it were we could not agree to the position of defendant. The constitution of the United States confers power on Congress "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Under this provision Congress derives its power to regulate inter-State commerce. All powers not delegated to the Federal government by the constitution are reserved to the States; and the States have full power over commerce which does not assume the character of inter-State commerce, and may pass such laws regulating commerce within the States as they may deem expedient or politic. If the places from which and to which passengers and property are carried, and the line over which they are carried, are within the State, then the commerce is domestic and is subject to State control. The transportation of property between points within a State by a railroad engaged in inter-State traffic does not, of itself, determine the character of the traffic and make it inter-State commerce. It is not the character of the road by which property is

248 — 25

transported, but the character of the traffic, that determines whether or not it is inter-State or intra-State commerce. Congress may enact laws requiring all railroads engaged in inter-State commerce to equip their cars with safety appliances, but the exercise of that power does not preclude a State from enacting laws requiring all roads engaged in intra-State commerce to equip their cars with safety appliances. The fact that some roads may be engaged in both inter-State and intra-State commerce does not prevent the State from adopting such regulations as it may deem proper to provide for the safety of men engaged in carrying on intra-State commerce, if such regulations are not inconsistent with or repugnant to the acts of Congress adopted for the regulation of railroads engaged in inter-State commerce. *People* v. *Chicago, Indianapolis and Louisville Railway Co.* 223 Ill. 581; *People* v. *Erie Railroad Co.* 198 N. Y. 369; 91 N. E. Rep. 849; *Detroit, T. & I. Railway Co.* v. *State,* id. 869; *Missouri Pacific Railway Co.* v. *Kansas,* 216 U. S. 262; *Missouri, Kansas and Texas Railway Co.* v. *Haber,* 169 id. 613; *Reid* v. *Colorado,* 187 id. 137; 2 Elliott on Railroads, 690; 4 id. 1671.

Section 1 of the Federal act provides that it shall apply "to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in inter-State commerce and in the territories and the District of Columbia, and to all other locomotives, tenders, cars and similar vehicles used in connection therewith." Section 7 of the Illinois statute provides that it shall "be held to apply to common carriers engaged in moving traffic by railroad between points in this State, * * * excepting those trains, cars and locomotives exempted by the provisions of section 6 of this act, and all those trains, locomotives, tenders, cars and similar vehicles used in inter-State commerce." There is no repugnancy between these provisions of the Federal and State acts. The act of Congress applies to all inter-State carriers in moving inter-State commerce, but it does not deprive the

State of power to regulate intra-State commerce although it is carried by a railroad doing an inter-State business. Section 2 of the Federal statute and section 2 of the Illinois statute are substantially identical, except that the Federal act applies to inter-State traffic and the Illinois act applies to traffic within the State. Said section of the Federal statute makes it unlawful for common carriers governed by the provisions of the act to haul or permit to be hauled over their lines cars used in moving inter-State traffic not equipped with couplers coupling automatically by impact and which can be coupled without the necessity of men going between the ends of the cars. Section 2 of the Illinois statute imposes the same requirement upon common carriers moving State traffic. Section 8 of the Federal statute is as follows: "Any employee of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this act, shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge." Section 9 of the Illinois act reads as follows: "Any employee of any such common carrier who may be injured by any train, locomotive, tender, car or similar vehicle in use contrary to the provisions of this act, shall not be deemed to have assumed the risk thereby occasioned, nor to have been guilty of contributory negligence, because of continuing in the employment of such common carrier or in the performance of his duties as such employee after the unlawful use of such train, locomotive, tender, car or similar vehicle had been brought to his knowledge." There is no repugnancy between any of these provisions. Section 8 of the Federal act exempts the employee from the assumption of the risk by continuing in the employment of the carrier after the unlawful use of a locomotive, car or train has been brought to his knowledge. Section 9 of the Illinois statute contains the same provision,

with the additional clause that the employee shall not be deemed to be guilty of contributory negligence because of continuing in the employment of the carrier, in the performance of his duty, after knowledge of the unlawful use of the locomotive, tender or car. The Federal statute has been construed as abolishing the doctrine of assumed risk in all cases to which the statute is applicable. (*Schlemmer v. Railway Co.* 205 U. S. 1; *Johnson v. Southern Pacific Railway Co. supra; St. Louis, Iron Mountain and Southern Railroad Co.* v. *Taylor, supra.*) In the *Schlemmer case* the court said: "We are clearly of opinion that Schlemmer's rights were in no way impaired by his getting between the rails and attempting to couple the cars. So far he was saved by the provision that he did not assume the risk." Under the Illinois statute plaintiff cannot be held to have assumed the risk of injury by going between the cars in the performance of his duties, and it does not appear that he was negligent in any other respect.

It is also contended that the verdict was contrary to certain instructions given by the court on behalf of defendant. The instructions referred to, we think, did not correctly state the law, but they were altogether favorable to defendant and could not possibly have prejudiced it before the jury. A verdict will not be disturbed which is in accordance with the law and the evidence, even if it is contrary to erroneous instructions given at the request of the party against whom the verdict is rendered. *McNulta* v. *Ensch,* 134 Ill. 46; *West Chicago Street Railroad Co.* v. *Manning,* 170 id. 417; *Dickson* v. *Swift Co.* 238 id. 62.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*