## The People of the State of Illinois, Defendant in Error, v. Fifty Cases Containing 30 Dozen Each, More or Less, of Shell Eggs. Perfection Egg Company, Claimant, Plaintiff in Error.

### Gen. No. 21,171.

1. FOOD, § 2*—*how Pure Food Act construed.* The provisions of the Illinois Pure Food Act (Hurd's Rev. St., ch. 127b, J. & A. ¶ 10740 *et seq.*), are modeled after those of section 10 of the Federal Food and Drug Act, and the construction of the latter act by the United States Supreme Court is persuasive authority, and as the Illinois Legislature adopted the language of the Federal statute, it must be taken to have intended to use the language in the sense in which it had been construed.

2. FOOD, § 2*—*what constitutes holding article of for sale within Pure Food Act.* In proceedings for the condemnation of eggs seized under Hurd's Rev. St., ch. 127b (J. & A. ¶ 10740 *et seq.*), decomposed eggs, which claimant intends to subject to some renovating process and put upon the market in the form of a dried product, are held for sale within the meaning of such statute regardless of the condition or form the article is to be in at the time it is ultimately to be sold, or of the intention of the shippers in regard to such ultimate form.

3. FOOD—*when eggs are adulterated.* Although only a portion of the eggs in a case seized under Hurd's Rev. St., ch. 127b (J. & A. ¶ 10740 *et seq.*) may be decomposed and unwholesome, the case as a whole comes under section 8 of such act (J. & A. ¶ 10747), which states that food is adulterated "if it consists in whole or in part of * * * decomposed * * * animal or vegetable matter."

4. FOOD—*when within discretion of court to order inquest as to character of food.* In proceedings on a seizure of a case of eggs under Hurd's Rev. St., ch. 127b (J. & A. ¶ 10740 *et seq.*) where a portion of such eggs are not decomposed, the court may, to prevent hardship, order an inquest for the purpose of determining what eggs are good and turn them over to the claimant, but it is not required to do so.

5. CONFLICT OF LAWS, § 31*—*when claim that Federal law applicable because shipment interstate without merit.* Contention of claimant that shipment of eggs at point of destination in the original packages seized under Hurd's Rev. St., ch. 127b (J. & A. ¶ 10740 *et seq.*) was an interstate shipment and therefore not sub-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ject to the penalties imposed by the state law, *held* to be without merit.

Error to the Municipal Court of Chicago; the Hon. JOHN A. MA-HONEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed March 15, 1916.

LANNEN & HICKEY and FRANCIS O'SHAUGHNESSY, for plaintiff in error.

MACLAY HOYNE and JAMES McCARTHY, for defendant in error; EDWARD E. WILSON and JAMES R. QUINN, of counsel.

MR. JUSTICE GOODWIN delivered the opinion of the court.

This writ or error is sued out to reverse a judgment obtained by the People of the State of Illinois, condemning and confiscating fifty cases containing thirty dozen each, more or less, of shell eggs, obtained in a proceeding instituted under section 10 of "an act to prevent fraud in the sale of dairy products, and imitation or substitutes, to prohibit and prevent the manufacture and sale" of unhealthful, adulterated, or misbranded foods, etc., in force July 1, 1907, (Hurd's Rev. St., ch. 127b; J. & A. ¶ 10740 *et seq.*). The statute in effect, provides that any article of food, which is adulterated or misbranded within the meaning of the act, or which is made, labeled or branded contrary to the provisions of this act, or which does not conform to the definition of analytical requirements provided in this act, and is being sold or offered for sale or exposed for sale within the State of Illinois, shall be liable to be proceeded against in any court of record, or before any judge thereof, or before any justice of the peace, within whose jurisdiction the same may be found, and seized for condemnation and confiscation.

The complaint alleged that the shell eggs in question, "being an article of food, were and are adulterated in this, that the said eggs   *   *  ·  *   consisted in whole or in part, of a filthy or decomposed or putrid, tainted or rotten animal   *   *   *   substance, and that the said eggs were then and there sold or offered for sale or exposed for sale within the State of Illinois," contrary to the statute.

The claimant defended on the ground that said eggs were not "held with intent to sell, offer for sale, expose for sale, or to be manufactured into a food product in manner and form as alleged in the complaint herein;" denied that said eggs more or less consisted in whole or in part of filthy, decomposed or putrid animal substance, and said that said cases contained a large percentage of good eggs, and that claimant was candling and sorting said eggs and separating the good from the bad and using only the good eggs.

On the trial, the evidence fully supported the contention of the State with reference to the condition of the eggs, although it appeared that some of the eggs were good.  The evidence further disclosed that it was the apparent intention of the plaintiff in error, hereinafter referred to as claimant, to subject all or a portion of the unwholesome and partly decomposed eggs to some renovating process, and then put the dried product on the market.  On this state of the record, the claimant seeks to reverse the judgment on the ground that the eggs were not being sold or offered for sale or exposed for sale within the State of Illinois within the meaning of the statute, and on the further ground that an entire case of eggs could not be confiscated upon proof that it contained a percentage of bad eggs.  The provisions of the statute are modeled after those of section 10 of the United States Food &. Drug Act, with the exception that section 10 of the statute provides for the seizure and condemnation of adulterated articles when they are "being transported

from one State  *  *  *  to another for sale.'' It
therefore follows that the construction placed upon this
statute by the Federal courts, and particularly by the
United States Supreme Court, is at least very per-
suasive authority when similar questions arise under
our own statute. In *Hipolite Egg Co. v. United States,*
220 U. S. 45, certain cans of eggs which were being
transported from one State to another were seized
under the authority of section 10. The eggs were the
property of Thomas & Clark, an Illinois corporation
engaged in the bakery business, which had shipped
them from St. Louis to their own warehouses in Illi-
nois. The evidence fully disclosed that the eggs were
not to be sold in their original form, but were to be
used in the baking business. It was therefore con-
tended that the eggs were not shipped for sale within
the meaning of the act. The court, after carefully
considering this question, declared that ''all articles,
compound or single not intended for consumption by
the producer, are designed for sale, and because they
are, it is the concern of the law to have them pure.''
This is, in effect, a holding that an article of food that
is not to be used by the producer is held for sale with-
in the meaning of the statute, regardless of the state
or condition or form the article may be in at the time
it is ultimately sold. It would seem that there can be
no doubt about the soundness of the conclusion of the
court, for the legislative authority had very clearly
indicated its intention that adulterated articles of food
should not be transported for sale at all, no matter
what the intention of the shippers might be in regard
to the ultimate form that the articles might take. The
language of the court is equally applicable to the case
at bar. Had the Legislature elected to do so, it might
have made an exception in favor of adulterated articles
intended to be put through a renovating process, but
it did not elect to do so, but chose instead to use com-
prehensive language identical with that contained in

the Federal statute. According to a well-established canon of construction, as it adopted the language of the Federal statute presumably with knowledge of the interpretation given it by the Supreme Court, it intended to use the language in the sense in which it had been construed. *Luken v. Lake Shore & M. S. Ry. Co.*, 248 Ill. 377.

The claimant's second point, that the statute does not authorize the confiscation of an entire case of eggs upon proof that the case contains a certain or uncertain percentage of bad eggs, seems to the court to be without merit. If a case contains eggs which are adulterated within the meaning of the statute, the case as a whole comes within the 8th section of the statute (J. & A. ¶ 10747), which expressly says that food is adulterated "if it consists in whole or in part of filthy, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article," and this seems to the court a wise provision, for it would certainly destroy the effectiveness of the statute if immunity could be given by mingling one or more good eggs with others that were rotten.

This case is clearly distinguishable from one where a case of eggs, through circumstances beyond the control of the possessor, has in it some eggs that are bad, but where there is no evidence that such eggs are intended to be put upon the market in any form. In the case at bar there was ample evidence from which the jury could find that some, at least, of the eggs which came within the condemnation of the statute were held with an intent to sell them, within the meaning of the statute as hereinbefore defined.

Claimant also complains of the extra-judicial method by which the court separated the good eggs from the bad. As already indicated, we are clearly of the opinion that it was within the power of the court to condemn the cases of eggs on account of the presence of the so-called adulterated eggs which are shown to have

been held for sale in violation of the statute. While the court might, to prevent hardship, order an inquest for the purpose of determining what eggs were good, and turn them over to the claimant, it was not required to do so, and therefore, the manner in which this was done is not one of which the claimant can complain.

Claimant's final contention that as there is a national food law, and as this was an interstate shipment remaining in the original package, it was not subject to the penalties imposed by the State law, is also without merit. The judgment of the Municipal Court will be affirmed.

*Affirmed.*