## Harvey E. Jones, Defendant in Error, v. John Barton Payne, Agent, Plaintiff in Error.

1. MASTER AND SERVANT—*issues and proof when injuries resulted from violation of Federal Safety Appliance Act.* In an action for injuries received as a result of a violation of the Federal Safety Appliance Act, it is not necessary to allege and prove that the car in question was, at the time of the injury, being used in interstate commerce or that at said particular time defendant and plaintiff were actually engaged in interstate commerce, it being necessary only to allege and prove that defendant was a common carrier engaged at the time in such commerce.

2. MASTER AND SERVANT—*what required by Federal Safety Appliance Act as to automatic couplers.* The Federal Safety Appliance Act makes it an absolute duty of a common carrier engaged in interstate commerce not only to provide automatic couplers, but also to keep them in repair, and it is not sufficient merely to exercise reasonable care to maintain the couplers in operative condition.

3. MASTER AND SERVANT—*when condition of automatic couplers and due care of plaintiff is question for jury.* In an action for personal injuries based upon violation of the Federal Safety Appliance Act, where there was evidence that the cars in question were brought together twice and failed to couple either time, it was a question of fact for the jury whether the car was equipped with automatic couplers which were in such state of repair that the cars could be coupled by impact without the necessity for plain-

tiff going between them and whether in doing so he used due care for his own safety.

Error to the Circuit Court of Vermilion county; the Hon. Augustus A. Partlow, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed October 25, 1921.

H. M. Steely and H. M. Steely, Jr., for plaintiff in error.

Charles W. Wortman and Clark & Hutton, for defendant in error.

Per Curiam.

This is an action on the case originally instituted in the circuit court of Vermilion county against Walker D. Hines, director general of railroads, for whom the plaintiff in error was subsequently substituted as defendant. A verdict and judgment were rendered in favor of defendant in error in the sum of $6,000 as damages for injuries which necessitated the amputation of his left foot. The case went to the jury upon the causes of action presented by the first two counts of the declaration. In the first count it is alleged that the director general on May 5, 1919, was possessed of and operating the Chicago and Eastern Illinois Railroad, which consisted of lines extending from points in Illinois to points in Indiana and Missouri, including a branch extending from Rossville Junction, Vermilion County, Illinois, to Sidell Junction in the same county; that on said date and for a long time prior thereto, plaintiff in error was and had been engaged in transporting interstate traffic and commerce along the lines of said railroad; that defendant in error on said date was employed as brakeman on that portion of the railroad running between Sidell Junction and Rossville Junction and that it was his duty to couple and uncouple cars being transported over said railroad; that under the laws of the United States of

America it was the duty of plaintiff in error not to haul or permit to be hauled or used on said line any car not equipped with couplers which would couple automatically by impact, and which could be coupled and uncoupled without the necessity of men going between the ends of the cars; that plaintiff in error, in disregard of said duty, had in use a car which defendant in error was required in the course of his employment to couple, which was not equipped with couplers which would couple automatically by impact without the necessity of a man going between the end of the car and the car to which it was to be coupled, contrary to the provisions of the said laws of the United States; that while in the usual course of his employment endeavoring to couple two cars, one of which was not equipped with a coupler that would couple automatically by impact without the necessity of a man going between the ends of the cars, it became necessary, by reason thereof, in order to make such coupling, for the defendant in error to go between the ends of the cars, and while in between the ends of said cars, attempting to make the coupling and while in the exercise of due care, the engine moved a car not equipped with such automatic coupler, in consequence thereof, his foot was crushed, etc. The second count is substantially the same as the first. To the declaration the plaintiff in error filed three pleas: (1) general issue, (2) contributory negligence and (3) assumption of risk.

Numerous assignments of error have been made and argued as reasons for the reversal of the judgment. It is contended that it is charged in the declaration that plaintiff in error and defendant in error were at the time of the accident each engaged in interstate commerce and that these facts are not established by the proofs. This is a misconception of the cause of action set out in the declaration. The declaration charges, in substance, that plaintiff in error had been before and

was at the time of the accident a railroad engaged in interstate commerce, and that it permitted to be hauled and used on its line a car not equipped with such couplers as the law required, and that by reason thereof the defendant in error was injured. Under the Federal Safety Appliance Act of March 2, 1893, it was necessary to allege and prove that the defective car was being used in moving interstate traffic at the time of the injury, as the terms of that act did not embrace all cars used on the line of a common carrier but only such as were used in interstate commerce. *Southern Ry. Co. v. United States,* 222 U. S. 20 [3 N. C. C. A. 822]. The act was amended by the act of March 2, 1903, which provided, among other things, that "the provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grab irons, and the height of draw bars shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce   *   *   *." The amendment brings within the operation of the act all cars used on any railroad *engaged* in interstate commerce. *Brinkmeier v. Missouri Pac. Ry. Co.,* 224 U. S. 268; *Devine v. Calumet River R. Co.,* 259 Ill. 449. It was not necessary to allege and prove that the car was being used at the time of the injury in interstate commerce or that at said particular time defendant in error and plaintiff in error were actually engaged in interstate commerce in order to recover for injuries received on account of a violation of the Safety Appliance Act, but on that question it is only necessary to allege and prove that plaintiff in error was a common carrier engaged at the time in the business of interstate commerce. The proof was ample to sustain this finding.

Section 8 of the Federal Safety Appliance Act abrogates the defense of assumed risk but leaves that of contributory negligence undisturbed, and the contention here is that the manifest weight of the evidence

shows that defendant in error was guilty of negligence which contributed to his injury. The train crew at the time of the accident consisted of the witnesses Kale, engineer, Scott, fireman and Pearson, Watson and defendant in error, brakeman. When the train arrived at Sidell Junction it consisted of the engine and one coach, the north end of the latter being used for baggage, express and mail. The engine was detached from the coach, and proceeded onto a switch or passing track to get a Pennsylvania railroad car loaded with powder for the purpose of attaching it to the train and hauling it north to a spur track near Jamaica. The engine was coupled to the Pennsylvania car and proceeded back to the main line where the car was backed up to the coach with the intention of coupling the same thereto. The impact failed to make the coupling and the car was backed against the coach a second time and again there was a failure to make the coupling. These facts, testified to by defendant in error, are also substantiated by the testimony of engineer Kale and fireman Scott, and the only evidence to the contrary is that of brakeman Pearson, who testified that the cars coupled on the first impact. Defendant in error, after the cars failed to couple the second time, gave a stop signal to the engineer, and noticing that the pin of the automatic coupler was raised so high that it rested on the shoulder in such a position that it would not drop on the impact of the cars and that it could not be made to do so by working the lift lever on the side of the car, stepped in between the cars to adjust the pin so that it would drop and make the coupling, and as he did so the engineer released the air from the brakes letting the slack run out of the brake chains so that the car rolled over his left foot. There was evidence tending to show that the pin had been worn so that it slid so far back upon the shoulder that it would not fall from the impact and could not be made to do so by working the lift lever on the side of

the car.   The evidence for plaintiff in error tends to show that the couplers on the two cars were in good working order.   The fact remains, however, that after two attempts the couplers failed to connect.   The Federal Safety Appliance Act makes it an absolute duty upon a common carrier engaged in interstate commerce not only to provide such automatic couplers, but also to keep them in repair, and it is not sufficient to exercise reasonable care to maintain the couplers in operative condition.   *Texas & Pac. Ry. Co. v. Rigsby,* 241 U. S. 33; *Luken v. Lake Shore & M. S. Ry. Co.,* 248 Ill. 377.   It was a question of fact for the jury to determine whether the car was equipped with automatic couplers which were in such a state of repair that the cars could be coupled by impact without the necessity of defendant in error going between them and whether the latter, in doing so, used due care for his own safety.

What we have already said disposes of a number of other contentions made by plaintiff in error.   We have examined with care the many criticisms of the rulings of the court on the admission and exclusion of evidence, and upon the giving and refusal of instructions, but we fail to find that many of them are justified, and in our opinion none are of sufficient gravity to cause a reversal of the judgment.   It is very seriously contended that the judgment should be reversed because of the improper arguments of counsel.   Most of the objections now urged were not made in the court below, and rulings obtained thereon and such of the remarks as were objected to we do not think were of such a character as would reasonably tend to arouse the prejudice or warp the judgment of the jury.

The judgment of the circuit court is affirmed.

*Affirmed.*