**In re VALENTINO'S RESTORATION & CLEANING SERVICE, Debtor.**

**ILLINOIS DEPARTMENT OF REVENUE, Plaintiff,**

v.

**VALENTINO'S RESTORATION & CLEANING SERVICE, Defendant.**

**Bankruptcy No. 97 B 17056. Adversary No. 97 A 1208.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 25, 1997.

Chris D. Rouskey, Joliet, IL, for Debtor.

James Newbold, Office of Attorney General, Revenue Litigation Dept., Kathryn Gleason, Office of U.S. Trustee, Chicago, IL, for Illinois Dept. of Revenue.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

The adversary proceeding now before the court was filed by the Illinois Department of Revenue, seeking a declaratory judgment that certain funds held in a debtor's bank account, subject to a tax levy by the Department, are not property of the debtor's estate in bankruptcy. The Department has moved for judgment on the pleadings. Illinois tax levies on bank accounts can be enforced by the Department after a 20–day waiting period, during which the taxpayer has the right to challenge the levy. Thereafter, state law appears to give the debtor no right to the levied funds. Because the debtor filed its bankruptcy case after the expiration of the waiting period, the debtor had no interest in the funds that could have passed into the bankruptcy estate. Accordingly, the Department's motion for judgment is granted.

### Jurisdiction

An adversary proceeding to determine whether particular property is within a bankruptcy estate necessarily, "arises in" the bankruptcy case (*i.e.*, a case filed under the Bankruptcy Code, Title 11, U.S.C., the "Code"); therefore such proceedings are within the jurisdiction of the district court pursuant to 28 U.S.C. § 1334(b). The district court may refer such proceedings to bankruptcy judges pursuant to 28 U.S.C. § 157(a), and by General Rule 2.33, the District Court for the Northern District of Illinois has done so. Bankruptcy judges are given authority to enter appropriate orders and judgments in core proceedings arising in bankruptcy cases, pursuant to 28 U.S.C. § 157(b)(1). The pending proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

The following facts are set forth in the adversary complaint filed by the Department of Revenue, and have been admitted by the debtor.[1] The debtor, Valentino's Restoration and Cleaning Service ("Valentino's"), is an Illinois corporation that employed a number of people during 1995 and 1996. Under Illinois law, Valentino's was required to pay withholding taxes to the Department of Revenue, but failed to make full payment of

---

1. The Department originally sought relief by motion, rather than by an adversary proceeding. The debtor responded to this motion with an opposing memorandum, which acknowledged the accuracy of the Department's factual assertions, but opposed the Department's view of the applicable law. Thereafter, this court determined that the relief sought by the Department could only be obtained through an adversary proceeding, pursuant to Fed.R.Bankr.P. 7001(2). The Department, accordingly, reasserted its posi-

tion in an adversary complaint, giving rise to the present proceeding, and the debtor elected to allow its memorandum in opposition to the earlier motion to stand as its answer. Since that memorandum denies none of the factual assertions of the Department, they have been admitted. Fed.R.Civ.P. 8(d) (averments in a pleading to which a response is required "are admitted when not denied in the responsive pleading"); Fed.R.Bankr.P. 7008(a) (applying—Fed.R.Civ.P. 8 to adversary proceedings).

these taxes for certain quarters of 1995 and 1996.

On March 24, 1997, the Department sent to Valentino's a Ten Day Notice of Intent to Seize Assets. This notice informed Valentino's that unless it made full payment of the taxes claimed to be due, all of its accounts and intangible assets (among other things) would be subject to levy. In response to this notice, Valentino's did not institute any proceeding to review its tax liability, but instead informed the Department that payment of the taxes would be forthcoming. No payment was made. On April 8, 1997, the Department sent a notice of levy to the First National Bank of Joliet (the "bank"), (1) requiring the bank to hold all funds then belonging to Valentino's, or coming due to Valentino's, for 20 days (i.e., until April 20, 1997), and (2) directing that the bank then pay all such funds to the Department, in satisfaction of Valentino's tax liability, up to the full amount claimed, $17,473. On May 8, having heard from the bank that it did not receive the notice of levy, the Department faxed another copy of the notice to the bank, which would have required payment by the bank on May 28. On May 19, the Department contacted the bank, which advised the Department that it was holding funds of Valentino's in an amount sufficient to satisfy the levy and that it would remit these funds to the Department in due course.

On June 6, 1997, Valentino's filed for relief under Chapter 11 of the Bankruptcy Code. As of that date, the bank had not remitted the levied funds to the Department and is still holding them, awaiting the outcome of the pending adversary proceeding.

### Conclusions of Law

■ The Department of Revenue and Valentino's contest ownership and control of the funds in Valentino's account, and resolution of the dispute depends on whether the funds are property of Valentino's bankruptcy estate. Creditors can take no action against property of an estate unless authorized by court order, under the automatic stay provisions of § 362(a) and (d). Further, a debtor in possession in a Chapter 11 case, like Valentino's here, may generally use property of the estate in the ordinary course of its business, pursuant to §§ 363(c)(1) and 1107, subject to providing adequate protection to creditors secured by the property.

■ As set forth in § 541(a) of the Code, an estate in bankruptcy includes "all legal or equitable interests of the debtor in property as of the commencement of the case," but the Bankruptcy Code does not define these interests. Rather, the nature and extent of a debtor's interest in property is defined by applicable nonbankruptcy law, usually state law. See Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (holding, under the 1898 Bankruptcy Act, that the property rights established by nonbankruptcy law are generally unaltered by federal bankruptcy law); In re Century Investment Fund VIII, 937 F.2d 371, 375 (7th Cir.1991) (applying the Butner rule to a question of the extent of the estate in a case filed under the Bankruptcy Code). Thus, the question now before the court is whether, at the outset of this cast, Valentino's had any legal or equitable interest-under applicable nonbankruptcy law, here, the law of Illinois-in the funds held by the bank that were subject to the Department's notice of levy. If Valentino's had such an interest, then the funds are property of the estate, usable by Valentino's and protected by the automatic stay. But if Valentino's did not have a legal or equitable interest in the funds under Illinois law, then the Department may deal with the funds free from any restraint of bankruptcy law.[2]

2. These principles were applied, in the context of a federal tax levy, in United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In Whiting Pools, the IRS levied on a taxpayer's tangible personal property, and the taxpayer thereafter filed a voluntary bankruptcy case before the seized property had been sold by the IRS. The debtor sought return of the property pursuant to § 542(a) of the Code, a provision requiring the turnover of property of the estate. The Supreme Court thus had to determine whether the seized assets were property of the debtor's estate, and it did so by analyzing the effect of the applicable nonbankruptcy law—the levy provisions of the Internal Revenue Code-on the debtor's property interests at the outset of the case. Based on its analysis of that nonbankruptcy law, the Court found that the debtor retained an interest in tangible property seized pursuant to a federal tax levy until the time that

Two statutes bear on the subject at issue. The first is a part of the Illinois Income Tax Act, entitled "Demand and Seizure." 35 ILCS 5/1109 (1996). It allows for a series of levies on different types of property of delinquent taxpayers. For several of these levies, the statute provides that the Department must send the taxpayer a notice demanding payment of the delinquent taxes, and that the Department may only proceed with the levy if the taxpayer does not institute a proceeding to review the matter within ten days of the notice. Among the levies provided for, the statute states that "[a]ny officer or employee of the Department designated in writing by the Director is authorized to serve process under this Section to levy upon accounts ... of a taxpayer held by a financial organization." The other statute, part of the Taxpayer Bill of Rights, states that the Department of Revenue has the duty "[t]o place seized taxpayer bank accounts in escrow with the bank for 20 days to permit the taxpayer to correct any Department error." 20 ILCS 2520/4(f) (1996).

Although there appear to be no judicial opinions or administrative regulations bearing on the application of these statutes, their impact on a taxpayer's property interests appears clear:

● The purpose of any levy under the "Demand and Seizure" section of the Income Tax Act is to obtain payment of taxes by seizing property of the taxpayer. At some point, the taxpayer whose property is subject to the levy loses interest in the property seized through the levy, and has its taxes reduced by the cash obtained by the Department as a result of the seizure.[3]

● When the levied property is a bank account, the Illinois statutes provide both for notice to the taxpayer that the levy may take place, and for a 20–day waiting period after service of a notice of levy on the bank, during which time (1) the bank is to "place the seized bank accounts in escrow," and (2) the taxpayer has the right to challenge the levy. The effect of the statutes is to give the Department of Revenue an interest in the taxpayer's right to payment from its bank upon service of the notice of levy, but not an exclusive interest until the passing of the waiting period.

● During the waiting period, when the bank account is held in escrow, the taxpayer continues to hold an interest in the funds, and may defeat the Department's interest in the account by instituting an appropriate proceeding to review its tax liability.

● At the conclusion of the waiting period, if the taxpayer has not instituted any challenge to the levy, the taxpayer appears to have no right to contest the levy. At that point, the escrow created by the waiting period terminates, and the bank's only obligation is to pay the Department of Revenue.

Occasionally, the Illinois courts have looked to similar federal laws in interpreting Illinois tax statutes, and there are provisions of the Internal Revenue Code similar to the Illinois tax levy provisions under consideration here.[4] However, the decisions inter-

---

the property was sold. 462 U.S. at 211, 103 S.Ct. at 2317. Prior to such a sale, the Court found, the levy resulted only in the grant of a possessory interest in the property to the IRS, while the debtor retained the right to be paid any proceeds of the property in excess of the taxes for which the levy was made. Id. However, the Court stated that "if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." 462 U.S. at 209, 103 S.Ct. at 2316. The rationale of *Whiting Pools*, thus requires, in the context of the present case, that the applicable nonbankruptcy law (Illinois tax levy law) be analyzed to determine its impact on the debtor's property rights.

3. Where the seized property is not in the form of cash, the statute provides for sale; the statute authorizes a sheriff to "seize and sell" real and personal property, and provides that the Department "may take possession of and may sell such property or rights to property" as are seized by an officer of the Department. 35 ILCS 5/1109 (1996).

4. In interpreting a state statute, Illinois courts may follow the construction of a similar federal statute as interpreted by federal courts, as long as the state statute was passed after the federal statute was construed and the state and federal statutes have a similar purpose. *Luken v. Lake Shore and M.S. Ry. Co.*, 248 Ill. 377, 383, 94 N.E. 175, 178 (1911). Illinois courts have followed this principle in interpreting state tax statutes that are similar to provisions of the Internal Revenue Code. *Branson v. Department of Revenue*, 168 Ill.2d 247, 254–55, 213 Ill.Dec. 615, 619, 659 N.E.2d 961, 965 (1995) (using definition

preting the federal law are in substantial disagreement, and so there is no coherent "federal interpretation" that could be adopted by the Illinois courts.[5] Moreover, to the extent that federal decisions are relevant here, it should be noted that in discussing whether a taxpayer retains an interest in a levied bank account after service of the notice of levy on the bank, none of the decisions point to an interest that would exist after the conclusion of the federal waiting period.[6]

In the present case, Valentino's bankruptcy petition was filed approximately nine days after the 20-day waiting period prescribed by Illinois law had lapsed. Thus, when the bankruptcy case was filed, the ownership rights in the levied funds had already transferred to the Department of Revenue under Illinois law, and Valentino's had no interest in these funds. Accordingly, the funds were not property of the estate.

## Conclusion

For the reasons stated above, the motion of the Department of Revenue for judgment on the pleadings is granted.

of "willfully fails" in a provision of the Internal Revenue Code, as defined by federal courts, to define a similar term in an Illinois tax statute); *Department of Revenue v. Joseph Bublick and Sons, Inc.*, 68 Ill.2d 568, 576–77, 12 Ill.Dec. 265, 269, 369 N.E.2d 1279, 1283 (1977) (same).

The Illinois levy provisions at issue in the present proceeding are similar to the levy provisions of federal tax law. One section of the Internal Revenue Code provides in pertinent part:

If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property ... belonging to such person....

26 U.S.C. § 6331(a) (1994). Another section states a special rule for levies on bank accounts: "Any bank ... shall surrender ... any deposits (including interest thereon) in such bank only after 21 days after service of levy." 26 U.S.C. § 6332(c)(1994). Based upon the effective dates of the Illinois and federal laws, it appears that the Illinois tax levy procedures were modeled after the federal provisions. The federal tax law provisions found in 26 U.S.C. §§ 6331(a) and 6332(c) were effective as of 1954 and 1988 respectively, and the Illinois 20–day rule was not effective until 1990. 26 U.S.C. §§ 6331(a), 6332(c) (1994); 20 Ill.Comp.Stat.Ann. 2520/4(f) (West 1993).

5. The decisions regarding the application of federal tax levies to bank accounts can be placed into two groups. One group holds that a federal tax levy on cash or cash equivalents does not deprive the debtor of ownership until the IRS obtains actual possession of the funds involved. *United States v. Challenge Air Int'l, Inc. (In re Challenge Air Int'l, Inc.)*, 952 F.2d 384, 387 (11th Cir.1992); *Sanchez v. United States (In re Sanchez)*, No. 95–53192–ASW, 1996 WL 757277, at *34 (Bankr.N.D.Cal. Sept. 24, 1996); *Metro Press, Inc. v. United States (In re Metro Press, Inc.)*, 139 B.R. 763, 764 (Bankr.D.Mass.1992); *Flynn's Speedy Printing, Inc. v. Southtrust Bank (In re Flynn's Speedy Printing, Inc.)*, 136 B.R. 299, 301 (Bankr.M.D.Fla.1992); *Davis v. Internal Revenue Service (In re Davis)*, 35 B.R. 795, 799 (Bankr.W.D.Wash.1983). The other group of cases holds that a tax levy on cash or cash equivalents has the effect of immediately terminating a debtor's interest in the property, because, unlike the situation in *Whiting Pools*, there is no need for a sale, and no potential for a surplus being returned to the debtor. *Brown v. Evanston Bank (In re Brown)*, 126 B.R. 767, 771–72 (N.D.Ill.1991); *McLaughlin v. Internal Revenue Service, (In re McLaughlin)*, 139 B.R. 9, 11–12 (N.D.Ohio 1991); *Rose v. Commercial Nat'l Bank (In re Rose)*, 112 B.R. 12, 14 (Bankr.E.D.Tex.1989).

6. *Hunter v. United States (In re Hunter)*, 201 B.R. 959 (Bankr.E.D.Ark.1996), does hold that a taxpayer retains an interest in a levied bank account during the waiting period. *Hunter* dealt with the situation of debtors who filed a bankruptcy case seventeen days after the IRS had served a notice of levy on their bank. *Hunter* holds that the 21–day waiting period of 26 U.S.C. § 6332(c) was "intended to give debtors an opportunity to seek review within the Internal Revenue Service." 201 B.R. at 960. Since the bankruptcy petition was filed during the waiting period, the *Hunter* court concluded that debtors' bank account was property of the estate.